## MATTER OF NWANGWU

### In Visa Petition Proceedings

### A–20501275

### *Decided by Board December 14, 1976*

(1) It appeared that beneficiary had previously been married in 1960 according to the native laws and customs of the East-Central State of Nigeria. Petitioner contended that that marriage had been dissolved automatically in 1966 when beneficiary's first wife married another while he was in England.

(2) Under the law of the East-Central State of Nigeria, a customary law marriage may be dissolved judicially and extra-judically. An extra-judicial divorce requires the observance of certain ceremonial formalities in accordance with the current customary divorce law of the particular ethnic group or tribe. A mere voluntary separation of the parties or desertion does not effectively dissolve the marriage.

(3) Where there was no showing that the minimum requirements for dissolution of marriage had been met, denial of the visa petition on grounds of lack of proof of termination of beneficiary's prior marriage was proper and the appeal will be dismissed.

ON BEHALF OF PETITIONER:  Ben C. Shapero
1200 1st National Building
Detroit, Michigan 48226

BY: Milhollan, Chairman; Wilson, Torrington, Maniatis, and Appleman, Board Members

The lawful permanent resident petitioner applied for preference status for the beneficiary as her spouse under section 203(a)(2) of the Immigration and Nationality Act. In a decision dated April 9, 1976, the District Director denied the petition on the ground that proof of the termination of the beneficiary's prior marriage was lacking. The petitioner appeals from that decision. The appeal will be dismissed.

The petitioner was born on December 7, 1937, in Nigeria and was admitted as a lawful permanent resident to the United States on October 22, 1969. The beneficiary was born on April 4, 1937, in Nigeria and entered the United States as a visitor on December 18, 1972. He and the petitioner were married in Detroit, Michigan on April 16, 1973.

It appears that the beneficiary was previously married in Nigeria in 1960 according to the native laws and custom of that country. It is the petitioner's contention that this customary marriage has been dissolved since the beneficiary's Nigerian wife remarried another in 1966, while

the beneficiary was living in England. The assertion is that this "automatically" dissolved the customary marriage and, as evidence, the petitioner submits a sworn affidavit by the beneficiary's brother attesting to the same. In addition, the beneficiary submitted a letter to the District Director in March 1974, in which, among other things, he stated that Nigeria is essentially a polygamous country; that a man could marry one, two or three women, and that not infrequently a woman might refuse to live with her husband, and marry another man without going through the courts to obtain a divorce. In the letter he also stated that "desertion and remarriage of one party effectively dissolves the marriage."

In a visa petition proceeding the burden of proof is on the petitioner. *Matter of Brantigan*, 11 I. & N. Dec. 493 (BIA 1966). Under 8 C.F.R. 204.2(c)(2) the petitioner must submit proof of the legal termination of the parties' previous marriages. Any pre-existing valid marriage is a bar to our recognition of the marriage on which the visa petition is based. The petitioner has failed to prove the legal termination of his previous customary marriage.

In *Matter of Akinsete*, Interim Decision 2369 (BIA 1975), we recognized that in the Mid-Western State of Nigeria a divorce must be obtained from a competent customary court in order to dissolve a tribal marriage. The law of the East-Central State of Nigeria, in which the beneficiary's prior marriage took place, is different. We have the benefit of a Library of Congress report dated October 6, 1975, entitled "Divorce in the East-Central State of Nigeria Between Persons Married Under Customary Law," which we are attaching hereto as Appendix A. It appears that, in the East-Central State of Nigeria, a customary law marriage may be dissolved not only judicially but also extra-judicially. An extra-judicial divorce requires the observance of certain ceremonial formalities in accordance with the current customary divorce law of the particular ethnic group or tribe of the parties. A mere voluntary separation of the parties or desertion does not effectively dissolve the existing marital relationship.

The only evidence submitted in support of the petitioner's claim that the beneficiary's first marriage was dissolved in 1966 is an affidavit of the petitioner's brother, which states that the first wife deserted the beneficiary, and married another man. The contents of that affidavit are at variance with statements previously submitted by the petitioner, and do not show the legal termination of the beneficiary's marriage under the laws of East-Central Nigeria.

In view of the fact that there has been no showing of the minimum formalities required to dissolve a marital relationship in Nigeria, we must agree with the District Director's decision that the beneficiary's first marriage was not legally terminated prior to his present marriage

to the petitioner. We find, accordingly, that the beneficiary's prior marriage is a valid pre-existing marriage preventing recognition for immigration purposes of the marriage between the petitioner and the beneficiary. The appeal will, therefore, be dismissed.

ORDER: The appeal is dismissed.

## APPENDIX A

### DIVORCE IN THE EAST-CENTRAL STATE OF NIGERIA BETWEEN PERSONS MARRIED UNDER CUSTOMARY LAW

Some formality is required to bring a Nigerian customary law marriage to an end.[1] These formalities may take place in or out of court:

> Unlike in English law dissolution of marriage under native law and custom could be either judicial or extra-judicial.[2]

Non-judicial divorce, however, is on the decline in Nigeria, even among people living in traditional societies:

> In the areas where non-judicial dissolution of marriage is permitted, divorce may also be obtained in . . . court. Indeed, it appears that more and more people are using these courts, rather than the more informal non-judicial means, in order to make their divorces "official" so as to be protected against any future claim that the marriage was never dissolved . . .[3]

The court system of the East-Central State of Nigeria was altered in 1971 to place jurisdiction in cases of divorce "between persons married under customary law" in the Magistrates' Courts.[4]

It is not always an easy task for a court having jurisdiction in the locality in question to determine issues of customary law. In *Inyang v. Ita* the court made the following observation:

> A good deal of evidence was given by both sides on this question of native law and custom. This kind of so-called expert evidence must always be treated with very great caution. The evidence of these experts is invariably coloured each by his own personal interests. The only way in which such testimony can be safely treated is to refrain from attempting to estimate individual credibility and to concentrate on drawing conclusions from the general trend of the evidence.[5]

In *Okpanum v. Okpanum*, a case contesting the validity of an alleged customary divorce, the court based its decision upon evidence of a formal meeting attended by representatives of both families of the

---

[1] S. N. Chinwuba Obi, *Modern Family Law in Southern Nigeria* (1966) 368.

[2] *Okpanum v. Okpanum*, 2 ECSLR 561, at p. 564.

[3] Alfred B. Kasunmu and Jeswald W. Salacuse, *Nigerian Family Law* (1966) 175.

[4] E.C.S.N. Edict No. 23 of 1971, Section 17 (1)(h).

[5] 9 *Nigeria Law Reports* 84.

parties to the marriage.[6] There, the husband formally renounced or terminated the marriage before both families which had been called together for that purpose.[7]

S. N. Chinwuba Obi, whose book on Nigerian family law is cited by the court in the *Okpanum* case, provides information on the details of the formalities required to bring an Ibo customary marriage to an end.[8] In rejecting the idea that a woman is free to abandon her husband and marry another man without divorce formalities, Obi comments as follows:

> Contrary to popular opinion in certain quarters, customary marriage is not dissolved by the mere fact that one spouse has left, or been sent away by the other with the express intention of never again living together with him or her as husband and wife. Where this happens, there is no more than desertion or voluntary separation as the case may be: the parties remain husband and wife in the eyes of the law nonetheless.[9]

Commentators have expressed the difficulties surrounding proof of a non-judicial divorce as follows:

> It is necessary to determine the acts necessary under the applicable customary law which will sever the marital bonds and the point at which the marriage is terminated. Then, too, it may be difficult to decide whether these acts were actually performed and what the intentions of the parties were at the time.[10]

For a foreign agency or tribunal to decide the issue of the validity of a divorce in these circumstances it would have to determine (1) the ethnic group or tribe of the parties, (2) the current customary divorce law of that group, and (3) proof of the facts alleged. These are the issues which the local Nigerian courts, on the other hand, are uniquely equipped to determine. For purposes of its use abroad, a judgment of a Nigerian court should be certified as a true copy by the court and, in turn, by the United States embassy or consulate as being the judgment of the court.

Prepared by Neil R. McDonald
Senior Legal Specialist
Near Eastern and African Law Division
Law Library, Library of Congress
October 1975

---

[6] *Okpanum v. Okpanum, supra,* at p. 564.

[7] *Okapnum v. Okapnum, supra,* at p. 565.

[8] Obi, *supra,* p. 368.

[9] Obi, *supra,* at p. 368.

[10] *Kasunmu and Salacuse, supra,* 172.